**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori A Mettert,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-22-08065-PCT-MTL<br><br>**ORDER** |

Plaintiff challenges the partial denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint seeking judicial review of that denial. (Doc. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 20, Pl. Br.), Defendant's Answering Brief (Doc. 21, Def. Br.), Plaintiff's Reply (Doc. 24, Reply), and the Administrative Record (Doc. 12, AR.), the Court hereby affirms the Commissioner's partially favorable decision.

**I.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the Administrative Law Judge ("ALJ") follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th

Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in disqualifying work, she is not disabled. *Id*. If she is not engaged in such work, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no such impairment, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC"), and proceeds to step four, where he determines whether the claimant is still capable of performing her past relevant work. *Id.* § 404.1520(a)(4)(iv).[1] If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v). If the claimant cannot perform any work, she is disabled. *Id*.

      The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d

---

[1] The "residual functional capacity is the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

947, 954 (9th Cir. 2002) (citations omitted).

## II.  PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits in April 2019 alleging disability beginning in July 2017. (AR. at 15.) She alleged disability resulting from spinal surgery, a history of abdominal surgeries, anxiety, depression, posttraumatic stress disorder, and substance abuse. (AR. at 307.)[2] She alleged these impairments affected her daily functioning in many ways, including diminished physical activities exacerbated by pain and strained relationships due to addiction and mental health. (AR. at 326-32.) The Commissioner denied Plaintiff's application at the initial and reconsideration phases of administrative review (AR. at 139-43, 148-56), and Plaintiff timely requested a hearing before an ALJ. (AR. at 157-58.)

ALJ Peter Baum conducted a telephonic hearing on March 1, 2021. (AR. at 38-71.) At that hearing, the Plaintiff and a vocational expert testified. Of note, Plaintiff testified that her neck symptoms worsened after her surgery, and that she experiences constant pain, numbness, loss of grip strength, and sleep difficulties. (AR. at 50-52.) She testified she could not sit, stand, or walk for longer than 30 minutes before needing to change positions. (AR. at 52, 54.)

In a decision dated May 14, 2021, the ALJ concluded Plaintiff became disabled on February 26, 2021. (AR. at 25-28.) Before that period, the ALJ concluded Plaintiff could perform light work with various non-exertional limitations. (AR. at 20-25.) The ALJ concluded Plaintiff could perform other jobs at step five prior to her established onset date. (AR. at 26-27.) Plaintiff exhausted administrative remedies and timely filed this suit.

## III.  DISCUSSION

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by "failing to follow proper protocol" for evaluating Plaintiff's waxing and waning neck and chronic

---

[2] Plaintiff underwent a cervical diskectomy, spinal cord and neural foraminal decompression, and interbody arthrodesis and instrumentation surgery in December 2018. (AR. at 3385-86.)

pain conditions (Pl. Br. at 14); (2) whether the ALJ erred by citing Plaintiff's daily activities to discredit her symptom testimony (Pl. Br. at 19); and (3) whether the ALJ erred by "excluding the extent of the medical history that shows medically determinable impairments, details of surgical history, *inter alia*[.]" (Pl. Br. at 21.) For the reasons explained below, the Court affirms the ALJ decision.

### A.    Medically Determinable Impairments

Effective February 26, 2021, the ALJ concluded Plaintiff was limited to sedentary work with various non-exertional limitations, but that no jobs existed in the national economy that she could perform. (AR. at 25, 27.)[3] The ALJ's established onset date corresponded to a cervical MRI showing severe canal stenosis at one level with "chronic cord flattening[.]" (AR. at 25, citing 5237-38.) The ALJ explained that subsequent exams showed diminished strength and numbness in Plaintiff's upper extremities. (AR. at 25-26, citing 5407.)

Plaintiff argues the ALJ erred by failing to properly evaluate her waxing and waning pain conditions during the relevant period. (Pl. Br. at 14-19.) Plaintiff notes the ALJ did not properly evaluate these conditions under Social Security Ruling ("SSR") 18-01p, which does not limit the onset of a disability to the date of diagnosis. (Pl. Br. at 14.)[4] Citing *Morgan v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991), Plaintiff asserts that medical expert testimony may be necessary to infer onset when dealing with a progressive impairment. (Pl. Br. at 14.) She also faults the ALJ for citing September 2020 cervical x-rays for the proposition she had no post-surgical complications because x-rays are not the preferable diagnostic tool and would not indicate the extent of nerve

---

[3] The ALJ concluded Plaintiff could not perform her own past relevant work at any time during the relevant period. (AR. at 26.)

[4] SSR 18-01p addresses how the agency determines the onset of disability. SSR 18-01p, 2018 WL 4945639, at *1 (S.S.A. Oct. 2, 2018). Regarding "exacerbating and remitting impairment[s,]" the agency will consider "the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings." *Id*. at *6. The ruling further provides that, at the hearing level, the decision to request the opinion of a medical expert to assist in inferring the onset date of disability "is always at the ALJ's discretion." *Id*.

- 4 -

involvement. (Pl. Br. at 14.) Plaintiff faults the ALJ for omitting "notable details" from examinations leading to an April 2019 CT scan and for failing "to account for the extent of exams consistent with cervical innervation and cervical lymphadenopathy, the chronic and waxing/waning nature of [the Plaintiff's] pain, *inter alia*." (Pl. Br. at 14-15.) Plaintiff cites evidence of a fall resulting in a C7 pedicle fracture and her nurse practitioner imposing a ten-pound lifting restriction. (Pl. Br. at 15.) Plaintiff also cites physical therapy notes purportedly contradicting her ability to stand or walk for prolonged periods, and evidence of cervical lymphadenopathy. (Pl. Br. at 15-16.) She asserts it is "striking" that while the ALJ "credits the [February 2021] cervical MRI," he did not credit "the immediate visits that led up to the cervical MRI and were the basis of ordering the cervical MRI to attempt to figure out symptoms. . . ." (Pl. Br. at 16.) She argues the ALJ improperly relied upon examinations showing no reports of reduced strength, or full strength upon examination, as this evidence does not properly account for the "waxing and waning" nature of Plaintiff's restrictions. (Pl. Br. at 17.) Plaintiff asserts the ALJ also did not fully consider other causes of her pain, such as chronic pain syndrome. (Pl. Br. at 18.) Having reviewed the record, the Court rejects these arguments and affirms the ALJ decision.

To begin, Plaintiff does not clearly explain how the ALJ failed to follow SSR 18-01p, or how that ruling or the *Morgan* case dictates a different result.[5] *Morgan* emphasizes the need to establish a "legitimate medical basis" for disability onset and affirms the ALJ's obligation to call upon the services of a medical expert when onset must be inferred. *Morgan*, 945 F.2d at 1081-83 (citing SSR 83-20). Importantly, however, *Morgan* involved the application of SSR 83-20, *id*., which was rescinded and replaced by SSR 18-01p, 2018 WL 4945639, at *1, 2 (S.S.A. Oct. 2, 2018); *Elizabeth M. v. Saul*, No. ED CV 20-00819-DFM, 2021 WL 1060232, at *4 (C.D. Cal. Mar. 19, 2021). SSR 18-01p was the ruling effective at the time of Plaintiff's application in April 2019

---

[5] SSRs "do not carry the force of law, [but] they are nevertheless binding on ALJs." *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) (quotations and citations omitted). Courts will defer to SSRs only to the extent "they are consistent with the Social Security Act and regulations." *Id*. (quotations and citations omitted).

- 5 -

(AR. at 15), and Defendant is correct that, under 18-01p, "'[t]he decision to call on the services of a[ medical expert ("ME")] is *always* at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.'" Soc. Sec. Ruling ("SSR") 18-01p, 2018 WL 4945639, at *6 (S.S.A. Oct. 2, 2018) (emphasis added). To the extent Plaintiff argues the ALJ was obligated to confer with an ME, SSR 18-01p provides no support. Even if SSR 83-20 was the applicable ruling, it "does not apply when the record has no meaningful gaps. A medical advisor is not required when, despite some inadequacies, a relatively complete medical chronology of the claimant's condition during the relevant time period is available . . . In these situations, the ALJ's duty to develop the record is discharged." *Wellington*, 878 F.3d at 874 (quotations and citations omitted). Plaintiff has not alleged, and the Court is not aware of, any such gaps in her treatment record during the relevant period which would necessitate the inference of an onset date.[6]

The ALJ's determination regarding Plaintiff's onset date is further supported by substantial evidence in the record. The ALJ cited clinical evidence of normal range of motion (AR. at 21, citing 972); normal reflexes, muscle tone, coordination, and gait (AR. at 21, citing 981 (normal reflexes, muscle tone, coordination), 990 (normal range of motion and gait)); and normal grip strength (AR. at 21 citing 1002). He noted Plaintiff's upper extremity symptoms improved after her December 2018 cervical spine surgery, and that Plaintiff reported "complete resolution of left arm pain, numbness, and tingling." (AR. at 21, citing 1064 (normal strength, sensation), 1089 (Plaintiff reporting "complete resolution of her left arm pain, numbness and tingling" post-operatively)). The ALJ noted Plaintiff's upper extremity strength remained intact after a fall resulting in a fracture of her cervical vertebra. (AR. at 21, citing 1090, 1099.) He cited stable findings on cervical CT and stable post-operative changes. (AR. at 21 citing 1118.) He also cited normal tone and strength, full range of motion, intact sensation, and normal gait. (AR. at 22, citing

---

[6] Plaintiff does, however, argue that the ALJ erred by omitting pre-onset date medical records from the file, which the Court will address in Section C.

1138.)

Importantly, the ALJ similarly evaluated the relevant period with respect to Plaintiff's mental health complaints, noting her normal thought processes, good concentration, no memory deficits, and normal mood and affect. (AR. at 22, citing AR. at 981 (normal mood, affect, judgment, and thought content), 1008 (normal mood, affect, and behavior), 1128 (normal thought content, affect, and memory), 5310 (full affect, logical thought processes, but depressive thought content), 5332 (depressed mood, but good concentration, normal thought processes, and age-appropriate memory).) The ALJ noted that while the Plaintiff exhibited increased lability during a consultative examination, she still scored in the unimpaired range on mental status testing and was able to sustain focus and attention. (AR. at 23, citing AR. at 1148.)

Regarding the 10-pound lifting limitation assigned by Plaintiff's treating physician assistant, the ALJ found this opinion unpersuasive on the grounds "there is no indication that such restriction was intended to be ongoing and such severity is not consistent with subsequent exams showing improvement[.]" (AR. at 24.) The ALJ previously cited evidence of Plaintiff's improvement after her December 2018 surgery. The ALJ also found unpersuasive the opinion of consultative examiner Mark Yohe, M.D., who opined Plaintiff could only lift weights under 10 pounds, that she should avoid heights and machinery, and that she should frequently change positions. (AR. at 23.) The ALJ discounted this opinion on the basis Dr. Yohe's assigned limitations were poorly explained and inconsistent with his own examination results and other examinations. (AR. at 23-24.) Plaintiff does not challenge the ALJ's treatment of this opinion evidence.

Finally, Plaintiff does not adequately explain how her chronic pain syndrome diagnosis impacted her functionality in ways the ALJ did not consider in determining her RFC. While the ALJ must consider the "combined effect" of all impairments, he need not "discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quotations and citations omitted). "Rather, [the ALJ] must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v.*

*Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quotations and citations omitted). "The mere existence of an impairment is insufficient proof of a disability[,]" and it is the Plaintiff's burden of establishing that an impairment is disabling. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citations omitted).

"[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence[,]" *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and this Court is not the trier-of-fact, *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (superseded by regulation on other grounds). While the Court must look to the record as a whole to determine whether the ALJ's conclusions are supported by substantial evidence, it "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995)). The Court finds that the ALJ appropriately considered Plaintiff's medically-determinable impairments and that the established onset date is adequately supported.

### B.     Plaintiff's Symptom Testimony

Before discrediting a claimant's symptom testimony, the ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quotations and citations omitted). "[I]f the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (quotations and citations omitted). Importantly, however, "[t]he claimant[ ]need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (quotations and citations omitted). Consequently, "the ALJ may not reject subjective

symptom testimony[ ]simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." *Id.* (quotations and citations omitted). Instead, the ALJ may look to "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti*, 533 F.3d at 1039 (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). Regarding daily activities, however, "ALJs must be especially cautious . . . because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citations omitted). "Recognizing that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, we have held that [o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Id.* (quotations and citations omitted, modifications in original). Alternatively, "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch*, 400 F.3d at 681 (citations omitted). Importantly, the claimant must perform those activities for a "substantial part" of the day. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (citations omitted).

The ALJ cited Plaintiff's work activity before the established onset date and her daily activities, including traveling to Las Vegas and Arizona (from North Dakota) in 2018, attending church services and support groups, volunteering, performing administrative duties for the church, and walking her service dog for one mile every day. (AR. at 22.) The ALJ found these activities demonstrated Plaintiff's mental capacity, including the ability to ask simple questions, ask for assistance, or "respond[]

appropriately to changes in a routine work setting." (AR. at 22.) While the Court commends Plaintiff's community engagement, it agrees with the ALJ. These activities suggest significant functionality and belie Plaintiff's claims that she suffered from a totally debilitating impairment before the established onset date. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted) (superseded by 20 C.F.R. § 404.1502(a) on other grounds) ("Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting [her] testimony to the extent that they contradict claims of a totally debilitating impairment."). The ALJ concluded these activities were commensurate with workplace activities such as responding appropriately to work setting changes and asking for assistance. (AR. at 22.) Regarding her work activity, while an unsuccessful work attempt may not be an appropriate basis to discredit a claimant's symptom testimony, *Lingenfelter*, 504 F.3d at 1038-39, an ALJ may still consider the reasons a work attempt ended, *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), as amended (Nov. 9, 2001). Here, the ALJ cited evidence that one of Plaintiff's jobs ended due to the onset of the coronavirus pandemic and not her mental impairments. (AR. at 22, citing 5343.) Plaintiff affirmed this at her hearing, although she testified to experiencing physical difficulties on the job and wanting to be laid off. (AR. at 45.) Nevertheless, it does appear her testimony is consistent with a record notation indicating this job ended due to external factors. (AR. at 5343.) Consequently, the ALJ cited clear, convincing reasons sufficient to discredit Plaintiff's symptom testimony prior to the established onset date.

### C.     Scope of the Record

At the hearing, the ALJ noted Plaintiff's counsel submitted 4,000 pages of medical evidence three working days prior, and that much of it dated back approximately 15 years before her alleged onset date. (AR. at 39-40.) The ALJ clarified he would not admit that evidence "unless and until [Plaintiff's counsel] calls out duplicates and calls out evidence that [does not] relate clearly to the period before [the alleged onset date]." (AR. at 41.) The ALJ granted Plaintiff's counsel 30 additional days to submit outstanding records

from other sources and to address the 4,000-page submission including aged records. (AR. at 41.) Later that day, Plaintiff's counsel submitted a letter identifying the time-relevant pages of a two-part record submission from the Sanford Broadway Family Medicine Clinic ("Sanford Clinic"), which were included among the 4,000-page submission that counsel and the ALJ discussed. (AR. at 387.) Counsel stated that pages 1,067-69 of "Part 1," and pages 1-652, 755-801, and 836-59 of "Part 2" were "relevant for tending to fall in the 2017 to present date range." (AR. at 387.) Counsel insisted, however, that separating out the time-relevant records "would violate principles of provenance[,]" that evidence pre-dating the period under review is still relevant, and that he was "stand[ing] by the entire submitted record[.]" (AR. at 387.) On March 29, 2021, Plaintiff's co-counsel submitted a letter indicating he filed additional post-hearing exhibits and did not anticipate filing additional evidence. (AR. at 388.) The record includes no further correspondence between Plaintiff's attorneys and the ALJ before the May 14, 2021 decision. In that decision, the ALJ noted that "the record remained open for 30 days after the hearing for submission of the timely identified evidence, all of which [the ALJ] admitted into the record." (AR. at 15.) The ALJ did not address counsel's letter or their discussion regarding aged records at the hearing.

Plaintiff argues the ALJ erred by "arbitrarily exclud[ing]" "thousands of pages" of medical evidence from the record. (Pl. Br. at 22.) Among this evidence, Plaintiff asserts, are operative notes from abdominal surgeries pre-dating her alleged onset date, which the Plaintiff argues, or at least implies, constitute relevant evidence. (Pl. Br. at 22, Reply at 2.) Defendant argues that the record includes a 1,669-page exhibit (23F) from the Sanford Clinic, which counsel may have referenced in his March 1, 2021 letter (AR. at 35, 3480-5148), and that it is unclear that the ALJ excluded anything at all. (Def. Br. at 15.) In reply, Plaintiff's counsel argues that the 1,669-page evidentiary submission "is part 1 only" and that "part 2 . . . involves a *different* set of records[,]" including "actual evidence of the abdominal surgeries[]" which the ALJ did not consider, or inadequately considered. (Reply at 2, emphasis in original.)

- 11 -


The Court notes Plaintiff has submitted proof of three evidentiary submissions from the Sanford Clinic (Pl. Br., Ex. A), and that there are several sets of medical records from the Sanford Clinic at 19F, 22F, and 23F corresponding to the same date ranges. (AR. at 3308-5148.) Hence, it is not immediately clear what evidence the ALJ excluded from the record, if any. Assuming the Plaintiff submitted pre-onset date records the ALJ did not exhibit, Plaintiff fails to persuade the Court this evidence was significant and probative to the question of her disability in 2017. An ALJ need only address "significant probative evidence[,]" *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022), and evidence of pre-onset functioning is "of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (citations omitted). Plaintiff attaches evidence to her Reply dated April 6th and 7th, 2013, but this pre-dates her alleged onset date by over four years. (Reply, Ex. A.) Notably, Plaintiff's counsel at the hearing did not argue the records at issue were material. In response to the ALJ's questioning of the need for these aged records, Plaintiff's counsel explained, "[I]t's not that I'm making some big allegations as to their relevancy. I just simply wanted to provide a complete record . . . ." (AR. at 41.) Plaintiff's counsel reiterated, "I don't think that those [records] are going to be core these [*sic*] ruling." (AR. at 42.)

To the extent Plaintiff is arguing the ALJ failed to appropriately consider her history of abdominal surgeries, the ALJ addressed them at step two. (AR. at 18.) Based on the Plaintiff's medical summary, the current record seems to contain ample documentation of her history of abdominal surgeries. (Pl. Br. at 7-8, n. 12, citing AR. at 485, 1137, 2965, 3115-16, 5317.) If the Plaintiff believes this history of procedures was not adequately accounted for in the RFC discussion, she has not cited evidence showing it significantly impacted her functioning during the relevant period. *Matthews*, 10 F.3d at 680 (noting it is the Plaintiff's burden to establish the disabling impact of an impairment).

Nor has Plaintiff met her burden of proving the ALJ abrogated a statutory duty to develop the record for one year prior to her alleged onset date. (Pl. Br. at 21, citing 42 U.S.C. § 423(d)(5)(B)). The record includes evidence from several years prior to

Plaintiff's July 2017 alleged onset date. (AR. at 575-619, 3115-3271.) Finally, Plaintiff has not clearly alleged the ALJ excluded evidence from the relevant period. (Pl. Br. at 22, Reply at 2.) Consequently, the Court finds no error.

Accordingly,

**IT IS ORDERED** that the May 14, 2021 decision of the ALJ is affirmed.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 14th day of July, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge